Good morning your honors. May it please the court, Harvey P. Sackett appearing on behalf of Kassie Benson. If you could speak up a little bit it would be useful. I'm sorry your honor. Harvey P. Sackett on behalf of Kassie Benson. Following reversal and remand by the district court of the first of two unfavorable decisions, a second administrative law judge again found Ms. Benson not disabled. The focus of my argument concerns the ALJ's assessment of Ms. Benson's four severe impairments. The ALJ stated prior to December 31, 2013 expiration of Ms. Benson's date last insured quote the medical records are inconsistent with disability unquote. Benson argues the record does not support this. I start with the two consultative examinations of Dr. Weems and Dr. Martin. I ask you a quick question based on my recollection from when I did social security cases as a before I took senior status. These consulting physicians they're picked by the by the agency. That's correct your honor. Is that true they're not they're not like treating physicians or anyone who anyone whom the social security beneficiary picked? That's correct your honor. Okay in the case of Dr. Weems state agency ordered her examination prior to the initial administrative hearing as opposed to Dr. Martin who saw Benson pursuant to the district court order which said that further examination was needed. As a result state agencies sought have Dr. Martin examine Ms. Benson. What's interesting about the scenario here is that typically the conflict is between the opinions of state agency evaluators and the treaters. However the primary conflict here is between the opinions of non-examining state agency evaluators and the consultative examinations of Dr. Weems and Dr. Martin. As noted they were both ordered by the state agency and the commissioner. This scenario is what the court saw in Ryan versus commissioner that's mentioned in my 20-AJ letter. For both of these reports and others I will discuss shortly the ALJ focused much of his analysis and findings on their observations or mental status examinations rather than considering the additional factors that led to the conclusions as to Benson's functional limitations. Is it clear how much he actually focused? I mean at some point he said he was giving them limited weight and at another point he said he was giving it some weight. What are we to make of that? Judge Corman in both situations he gave these reports limited weight or some weight as you note because he again defaulted time and time again to the mental status examinations and the doctor's respective observations. In both instances the ALJ on remand failed to mention a multitude of other things that each doctor had done in assessing Ms. Benson. For example in the case of Dr. Weems she conducted past psychiatric history, medical history, family social history, and employment histories. The ALJ did not mention this. Dr. Weems also indicated that she rarely did chores. She did laundry once or twice a month. She became very anxious around crowds. She had lost her jobs because of absences. She has to reread things and she had some suicidal observation ideation excuse me and Ms. Benson stays in bed most of the day. Only then only then did Dr. Weems first give a mental status examination assessment and this is what the what the ALJ left out which is critical. In concluding Dr. Weems said that maintaining focus she would have to have instructions repeated to her in the work environment. She would have difficulty maintaining attendance and she would have poor stress tolerance. She would become easily overwhelmed and have difficulty getting through the workday. Similarly Dr. Martin conducted his psychological evaluation of Ms. Benson in January 2018. Again this was done by order of the appeals council pursuant to the district court's remand order in May 2017. This was the entire reason why she was sent to see Dr. Martin and as I noted the case was previously amended by the district court because the initial hearing decision the ALJ determined there was no severe impairment. This time around the ALJ found Ms. Benson had established severe impairments but he rejected Dr. Martin's conclusions. The ALJ further discounts Dr. Martin's opinion because he examined Ms. Benson four years after her date last insured. This is disingenuous. The commissioner cannot have it both ways. First ordering Dr. Martin's examination pursuant to the district court's remand and then turning around saying well we're not going to discount it because it comes too late and to further underscore the point how Dr. Martin reached his conclusions the form state agency directed him to complete says quote the opinion should be based on your findings with respect to medical history clinical and laboratory findings diagnosis prescribed treatment and response to prognosis unquote. That's exactly what Dr. Martin did. Can I interrupt for just a minute? I have Dr. Martin's report in front of me. What part of Dr. Martin's report do you rely on for your conclusion that Dr. Martin has concluded that she's incapable of performing qualifying work? Certainly Judge Fletcher. Dr. Martin first reviewed all of her records. He then stated he conducted a quote complete psychological evaluation. He then administered a battery of three psychological tests. The Wexler adult intelligence scale, the Wexler memory scale and the trail making test and then like with Dr. Weems only then did he conduct the mental status examination. He indicated while Benson presented in a friendly and cooperative fashion she appeared quite anxious. Ultimately based on all these factors your honor his diagnostic impression was that Ms. Benson suffered from a major depressive disorder, a generalized anxiety disorder and a somatic disorder. Insofar as her limitations work-wise he stated that she was markedly impaired insofar as her ability to complete a normal work day as well as being markedly impaired to deal with the usual stresses of work. I'm with you here. I'm reading work-related abilities. He's got a list of nine. Performing simple repetitive tasks not significantly limited. Performing detailed complex tasks mildly limited. Maintaining regular attendance moderately limited. Ability to perform work activities consistent basis moderately limited. Ability to perform work activities without special supervision mildly limited. Ability to compete normal work day or work week without interruptions markedly limited. I mean you quoted that correctly. Ability to accept instruction from supervisors mildly limited. Ability to interact with co-workers in the public mildly limited. Ability to deal with usual stresses encountered in competitive work empowerment markedly limited. As I read all of those am I supposed to conclude or must I conclude that she's incapable of performing qualifying work? That's correct your honor because those two marked limitations alone would preclude her from performing the baseline or least common denominator of work meaning simple repetitive tasks with little involvement or with other persons meaning co-workers supervisors or the public. And what what is the I mean because I've looked at the the VE testimony what would you point to in this record that establishes what you just said that with those limitations you can't work? Certainly. Judge Miller when on cross-examination the VE was asked if somebody had a marked limitation again insofar as dealing with stress and and staying on task for a loss of at least 20 percent of the time the VE responded that nobody could perform competitive work and that's what I rely on that that particular cross-examination. If the panel has no other questions I respectfully will reserve my balance of my time. Could I ask you about could I ask you about her various indications in the record that she had pain and she was treated for it and she was on painkillers. Do you do you are you arguing or or if you're not why not that the combination of the two would be a relevant consideration? It certainly would be your honor because the administrative law judge had to consider not the most significant impairment but all impairments in combination. So yes her chronic pain syndrome in combination with her mental limitations certainly would enhance her inability to work. So I'm not basing my entire argument simply on the mental impairments but there is clearly the most predominant and by themselves again without precluding the consideration of chronic pain she would be disabled from all types of work. Thank you. Okay let's hear from the government and then we'll make sure to give you a chance to respond. Thank you your honor. You're muted. Thank you your honor I'm sorry about that. May it please the court Daniel Talbert for the acting commissioner of social security Kilolo Kijakazi. The claimant has challenged a number of factual findings in the administrative law judge's decision but substantial evidence supports those findings and the ALJ's decision is free of reversible legal error. Therefore the government asks the court to affirm the ALJ's decision. Let me start out with a question. I'm sorry Judge Corman please go ahead. No you go ahead. Well the other side contends that if the reports of Dr. Martin and of Dr. Williams are fully credited she's disabled. Do you agree with that? No your honor I don't. I'd like to make kind of a two-part response to that question. First I'll address it most directly that we don't agree that those opinions by themselves established disability. They're that's that's that's not my that's not my question. I'm asking you if those two reports accurately describe what she can and cannot do is she disabled? No I I don't I think I think if the court finds that there's error in evaluating those opinions we would need further clarification of specifically what those limitations mean in a work setting and vocational expert testimony about the effect of that. Yeah but otherwise we don't agree that ALJ erred in evaluating. Was the was one of the questions you could it's hard to keep all the facts in this case in mind but wasn't one of the questions the vocational expert dependent on these two her ability to work a full work week and and to accommodate to a work environment and if that's true wouldn't she would wouldn't the vocational experts testimony require a finding of disability? So I would say no your honor. My understanding is that the vocational expert testified that someone who is off task I'm looking up here 15 percent of the time or 20 percent of the time or needed to have instructions repeated those those might establish disability but Dr. Martin either Dr. Martin or Dr. Weems said that the claimant had those specific restrictions. You mean in terms of percentages? Yes. In other words the fact that she couldn't work a full week with it or that she couldn't accommodate herself to a work environment if they had put it in percentages that coincided with the question that was put to the the expert that would be enough? Well I'm going to push back on the thought that that would be enough but I guess if we're going from the perspective of saying that that the ALJ erred which again we we don't concede and I'd like to talk about that in a moment if I can but if the court found error in those opinions and those opinions specifically articulated what level of limitation there was and said the claimant would be off task x percent of the time or the claimant couldn't do certain things maybe those opinions could establish disability but they don't say that. Well they don't say it and they don't not say it so what would you suggest that a remand to clarify that? I would suggest that the court affirm the ALJ's decision because the ALJ properly rejected those opinions. If the court disagrees then a remand would be necessary to clarify that but I don't think we need to even reach that point because the ALJ reasonably rejected those opinions. So in addition to what we have in our brief about that and I think this is probably in the brief but I think I could most most plainly articulate why the ALJ reasonably disagreed with Dr. Weems and Dr. Martin's opinions to the extent that they suggested greater limitations. That finding was was reason the ALJ found that they were inconsistent with their own examinations and that's the data that those doctors who were sources had they personally examined the claimant they did mental status examinations they did cognitive testing and Dr. Martin's case and that was the basis they had for for assessing limitations and the ALJ said well those examinations those findings were largely normal and that's not consistent with any market limitations or other difficulties that are beyond what the ALJ found here. Now that was a reasonable interpretation of the record not just because the ALJ is the fact finder and he is free to kind of compare the opinions to what the examinations showed but because by my count we have really four people that basically agreed with the ALJ's interpretation of that. The first person is state agency psychologist Dr. Fitzpatrick who reviewed this the records at the initial stage and her opinion her she said she said that well she said Dr. Weems's assessment was largely unremarkable that's on page 60 of the certified administrative record. Dr. Schumacher another psychologist who's also an expert in disability programs on page 75 of the administrative record said Dr. Weems's examination largely unremarkable. When this case went up to district court the first time the magistrate judge affirmed the ALJ's rejection of Dr. Weems's opinion along similar lines and that's on pages sorry I lost my my notes here 617 and 618 of the certified administrative record and then of course the district judge in this underlying case who affirmed the ALJ's decision also accepted the ALJ's interpretation of the record. So we have two state agency psychologists who are experts in disability programs who are saying that when a when a consultative examiner makes essentially normal findings but says oh there's all these difficulties it's reasonable for the fact finder the ALJ to say okay that's not consistent that's not supported and then we have two judges from the district court that that accepted that same kind of finding. So our position is that the ALJ's rejection of Dr. Weems and Dr. Martin based on those essentially benign examination findings was entirely reasonable and easily satisfies the deferential substantial evidence standard. So for those reasons we had asked the court to affirm the ALJ's rejections of those portions of the examining source's opinions and not even need to reach the point of what what further proceedings would be necessary because none are necessary the court should simply affirm. Can can you say a bit about what what exactly the inconsistency is between the the mental status findings and the other findings because I mean I'm looking at that at Weems for example and the the the mental status examination you know says a bunch of things that that really don't I mean it seems like they're that and and the findings about limitations and focus and distraction and needing to have instructions repeated they seem to be addressing two different things so I it's not clear to me how they're inconsistent. Can you clarify that? Well so your honor I would say and I apologize for kind of repeating myself but we we aren't any of us doctors or experts in in mental health or disability programs the way that people like Dr. Fitzpatrick and Dr. Schumacher whom I mentioned just a few moments ago are and they said that this is a largely unremarkable examination that is not consistent with the limitations that Dr. assessed. So I think it's reasonable to defer to what those experts said but but if we want to go beyond that I could just note the the mental status exam I mean if we read it it's and then the intellectual the all the portions of it it's it's basically a normal I mean I think I think that what Dr. Fitzpatrick and Dr. Schumacher said makes sense again we should defer to them because they're experts in this but if we look at it for ourselves we could see there's there's nothing particularly abnormal other than the fact that the claimant didn't do a great job of subtracting by sevens from 100 which is what we call serial sevens. Yeah you know as I look as I look at the gestalt of this case we have a young woman who struggled with obesity all of her life at the last date on which I've got numbers 2012 she's five foot five and a half inches tall and she weighs 340 pounds she's never married she lives at home with her parents she has limited mobility she lost her last job because she had attendance problems it was some kind of a paralegal job this woman strikes me as I look at the entire record as essentially unlikely given her physical limitations and her unquestioned history of depression as likely to be unemployable she may be sufficiently intelligent to pass you know spell the word world backwards but that's really not the entire question as to whether or not she's sitting at still taking a test about intellectual capacity the question is can she if you look at the entire package do the work and my sense is I mean I've seen so many of these cases I can't even count anymore uh this one is uh you know this woman looks pretty disabled to me well your honor the point I would make is that I mean I think the overarching point is that we need to look at this from the perspective of the ALJ as the fact finder and although we we may disagree with the ALJ's characterization the question is whether it's a rational or possible interpretation of the record and I want to point out that with respect to the physical impairments which addresses the obesity the pain and all those other limitations I believe that all of the doctors who gave assessments about her physical functioning said that she was able to perform at least the level of work that the ALJ found so that's what the doctors are saying you know this claimant may be obese she may have certain objective findings and other limitations but the doctors who again are the experts on these things well I'm going to the records of course is that's not the only factor I'm also looking at the reports of severe depression there are parents report and there's no dispute that this is an accurate report many days she basically doesn't get out of bed and we're talking about a woman who's having very severe difficulties and has had them for a very long time so if I could talk about the depression the mental health issues my reading of this record is that the claims that she spends most of the time in bed is that she's attributing that almost entirely to pain but to the extent that we're talking about the depression affecting that I would go back to the ALJ's very specific findings about her testimony about mental health limitations not just the ALJ's discussion of Dr. Weems and Dr. Martin whom the ALJ reasonably agreed with in large part but not entirely because again their findings were mostly normal but also the ALJ's fairly detailed discussion of mental status examinations throughout the record his discussion of the claimant's course of treatment for depression which was which was fairly limited but when she complied with it or when she had this treatment she it was effective and I think the ALJ talks about this on pages 497 to 500 of the certified administrative record in particular and the ALJ notes also a number of the claimant's activities including going out and volunteering at an animal shelter I mean there's there's other things too. I'm sure you know this she volunteers at the animal shelter for three hours on Sundays and sometimes has to leave because the stress is too much so if that's an evidence that she can I'm afraid there's not much evidence that she can work coming out of that. Well your honor that's part of the evidence I wouldn't I wouldn't rest my entire case on that. I wouldn't if I were you. No I just said I'm not your honor but the entire point is that is plainly inconsistent with a claim that she has to be in bed 98 to 99 percent of the time but even putting that aside the ALJ has other specific findings I would urge the court to look especially at pages 497 to 500 of the certified administrative record to look at the ALJ's very specific findings on pages I think it's 501 and 502 about specific testimony and to consider what the state agency doctors said about the examinations what what what the record overall shows in terms of opinions demonstrating the claimant is capable of performing a significant range of work that's at with what the ALJ found and to consider that all under the deferential substantial evidence standard and determine that the ALJ's findings are reasonable they are at least one plausible interpretation of this record and to therefore affirm the ALJ's decision. Okay any further question for the bench? In terms of deference to the ALJ are there any disputed issues of fact that that he is in a particularly good position to resolve? Yes your honor I would say respectfully just about everything um that the ALJ is the fact finder that's it's basically the trial proceedings but if everybody agrees the sun is shining then then the sun is either shining or it's not the question I'm asking is is there anything is is he relying on on on any resolution of disputed issues of fact? Well I think I think there's conflicting opinion evidence to some extent and there are conflicts between the claimants allegations and the record that the ALJ discussed at some at some length so I have the problems that I have with some of that is that for example you know he for example he says he gives some weight to the to the uh to Weems and Martin but I don't know what what that means and and the same thing is true uh with respect to what he says about the state examined the state uh the state examiners uh he he says you know some way might wait but it's not exactly clear it's a sort of he's giving him enough weight just to find that she's not disabled. Well I I would disagree with that your honor I mean the ALJ makes a specific residual functional capacity finding and he says what the claimant is able to do he finds the claimant limited um largely consistent with what Dr. Martin and Dr. Weems said and I can go one by one through certain things if the court wants to do that I realize I'm well over my time but I'm happy to continue answering any questions the panel has um but but through that with with Judge Fletcher and came to two where there were there were marked um uh disabilities her ability to work a full work ability to accommodate herself to the workplace. Yes your honor and the judge the ALJ found those inconsistent with again the the normal findings that those doctors made on examination just as the state agency doctors um assessed and as the two judges from the district court essentially agreed that that there was that inconsistency which permitted the ALJ to make that finding. Okay any further questions from for the government uh Mr. Sackett let's put two minutes on the clock we took the government well over time so you just say what you need to say you're still muted you're muted push the button you're muted I apologize your honor can you hear me now yeah well if you speak up I can I'm sorry your honor uh several points uh first I want to go back to Judge Miller's question about the correlation between the VE's testimony and being off task 15 or 20 percent uh that with that the form that Dr. Martin was asked to complete find the word marked and in that form the word marked is defined as a serious limitation in this area so I don't think it's a leap of faith to say that a 15 or 20 percent deficit is any higher than a mark limitation uh opposing council keeps going back to uh the term normal and observations and that's where the argument falls short because a mental status examination is a diagnostic tool it is not intended to assess a doctor's statement of limitations it's not intended to assess how the person would function insofar as the need to work eight hours a day five days a week uh opposing council also keeps going back to state agency well again this is what we saw in Ryan where uh the commissioner kept defaulting back to the opinions of state agency positions and and psychologists saying they're experts but they gave a little if if the appropriate amount of weight to the assessment of their own consulting psychologists that is what we have here one final point and I don't intend to presumptuous uh there's been some discussion about what the remedy might be uh using the three-prong credit is true rule from Harmon it's Benson's position that there's no need to send this case back uh there's no further evidence that can be compiled her date last insured was 2013 so there's no new evidence out there secondly if the evidence were credited as true meaning these testimony the limitations of mark by both both Dr. Weems and Dr. Martin the only conclusion that can be reached is that uh Benson's disabled uh as a result of that uh remand for further administrative proceedings it would be a waste of resources and time well not all not all of the not all of the there were reports as late as 2017 or 2018 weren't there on on the second on the after the date last insured so given the the uh marker of 12 31 13 uh the critical report first is that of Dr. Weems Dr. Martin's report simply mirrors that of Dr. Weems so the point being that nothing really changed over the course of six years and that's why going back for another administrative hearing is not going to be productive these questions have already been thank you your honors okay thank thank both sides for their arguments uh the case just argued is now submitted
judges: FLETCHER, MILLER, Korman